Peter **ETCHART** and Kathy Etchart, Plaintiffs,

v.

**BANK ONE, COLUMBUS, N.A.,** Defendant.

No. CV–N–89–820–ECR.

United States District Court, D. Nevada.

March 15, 1991.

**240**

James E. Wilson, Jr., Carson City, Nev., for plaintiffs.

Donald A. Lattin, Walther, Key, Maupin, Oats, Cox, Lee & Klaich, Reno, Nev., for defendant.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

This suit arises out of incidents occurring after a settlement of an earlier case involving the same parties. In 1984, plaintiff Peter Etchart ("Peter") obtained a VISA credit card from defendant. In February, 1987 both plaintiffs were hired as correctional officers at the Nevada State Prison. On February 17, 1987, Peter was attacked by an inmate at the prison. He suffered physical and mental injuries.

In April, 1987, Peter was diagnosed as totally and permanently disabled because of his mental injuries. He was unable to work. Consequently, Peter could not make the minimum monthly payments on his VISA. Defendant allegedly began harassing plaintiff over the credit card. Subsequently, Peter allegedly suffered severe emotional distress, and on January 1, 1988, plaintiffs filed a lawsuit against defendant in United States District Court.

The trial was held from March 7–March 10, 1989, before the Honorable Bruce R. Thompson, United States District Judge. Before closing arguments, the parties reached a settlement. Under the terms, plaintiffs released all claims against defendant "in any way arising from that dispute culminating in an action being filed in the United States District Court, District of Nevada." In exchange, plaintiffs would receive $40,000. Further, defendant was obligated to furnish something in writing indicating that the debt with defendant no longer existed. Defendant's attorney assured the court that defendant would either send a letter to the Credit Bureau informing them that the account had been

taken care of, or would solve the problem internally, through its computers. The parties reached this settlement on March 10, 1989.

After some time, defendant paid plaintiffs the $40,000. However, by June 29, 1989, defendant's and TRW's records indicated that plaintiffs still owed defendant money. Plaintiffs discovered this in attempting to obtain a loan for a new home. On June 29, 1989, plaintiffs' counsel wrote to defendant's counsel, requesting that the debt be removed from the records. By July 12, plaintiffs' counsel had received no response, and again wrote to defendant's counsel requesting that the debt be erased from the records.

On July 18, defendant's counsel wrote a letter to plaintiffs' counsel indicating his belief that under the terms of the settlement, defendant did not have to provide plaintiffs a letter stating that the debt no longer existed. On July 31, plaintiffs' counsel wrote to Judge Thompson, explaining the situation. Judge Thompson allegedly contacted defendant's counsel to discuss the situation. Defendant's counsel allegedly assured Judge Thompson that the situation would be remedied. By August 24, 1989, the problem had not been remedied. On that date, Judge Thompson entered an order stating that plaintiffs did not owe defendants anything. A notice of entry of order of judgment was sent to defendant's counsel on September 19, 1989.

On September 25, 1989, at plaintiff Kathy Etchart's ("Kathy") request, TRW sent defendant a Consumer Dispute Verification indicating that Kathy claimed the account had been settled. Defendant returned the form to TRW indicating that the information it was reporting, that plaintiffs still owed defendant money, was correct. The same events happened again three months later.

On December 5, 1989, plaintiffs filed the instant suit in state court, alleging six causes of action under state law. On December 11, 1989, defendant changed its records to reflect that plaintiffs owed nothing. On December 27, 1989, defendant removed the suit to this court on the ground

that plaintiffs are diverse from defendant, and the amount in controversy exceeds $50,000. As late as March 14, 1990, defendant continued to report on an 800 phone number that plaintiffs still owed money to defendant.

On November 14, 1990, after discovery, defendant filed a motion for partial summary judgment (document # 35), seeking summary judgment on plaintiffs' first two causes of action, intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED"). Defendant argues that as a matter of law, plaintiffs fail to meet the elements necessary to recover for IIED. Defendant also asserts that under Nevada law, a cause of action does not exist for NIED unless the plaintiff is a bystander who suffers physical injury as a result of witnessing a tort occur to a close relative.

On December 19, 1990, plaintiffs filed in one document (document # 39) an opposition to defendant's motion and a cross-motion for summary judgment on the IIED claim. Plaintiffs allege that on the IIED claim, they should recover as a matter of law since they undisputedly meet the elements necessary to recover. On the NIED claim, plaintiffs allege that Nevada recognizes claims for NIED in the "direct victim" scenario, and a jury should decide whether they may recover.

On January 11, 1991, defendant filed in one document (document # 41) a reply to plaintiffs' opposition to defendant's motion for summary judgment, and an opposition to plaintiffs' cross-motion for summary judgment. On January 22, 1991, plaintiffs filed a reply (document # 42) to defendant's opposition to plaintiffs' cross-motion for summary judgment. On February 1, 1991, defendant filed a "Supplemental Opposition" (document # 44) to plaintiffs' cross-motion for summary judgment.

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). The moving party is entitled to summary judgment as a

matter of law where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute. Fed. R.Civ.P. 56(c); *Semegen v. Weidner*, 780 F.2d 727 (9th Cir.1985). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141 (9th Cir.1983).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson, supra.* As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248, 106 S.Ct. at 2509. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex, supra.*

Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.* When faced with a motion for summary judgment, the material before the court "must be viewed in the light most favorable to the [non-moving] party," *Adickes v. S.H. Kress*

*and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proven under the allegations of the complaint. *Halet v. Wend Investment Co.*, 672 F.2d 1305 (9th Cir.1982).

In this case, the parties have each moved for summary judgment on IIED. In evaluating defendant's motion, we resolve all doubts and inferences in favor of plaintiffs. In evaluating plaintiff's motion, we resolve all doubts and inferences in favor of defendant. In evaluating defendant's motion for summary judgment on NIED, we resolve all doubts and inferences in favor of plaintiffs.

### Intentional Infliction of Emotional Distress

In *Branda v. Sanford*, 97 Nev. 643, 648, 637 P.2d 1223 (1981) and *Star v. Rabello*, 97 Nev. 124, 125, 625 P.2d 90 (1981), the Nevada Supreme Court recognized the tort of intentional infliction of emotional distress ("IIED"), or "Outrage," and set out its elements. To recover for IIED, a plaintiff must show (1) extreme and outrageous conduct by defendant; (2) defendant's intent to cause emotional distress or reckless disregard as to the probability of emotional distress; (3) plaintiff's severe emotional distress; (4) actual and proximate causation between defendant's conduct and plaintiff's emotional distress. Defendant argues specifically that as a matter of law, plaintiffs fail to meet (1), (3) and (4).

*Extreme and Outrageous Conduct*—Defendant asserts that plaintiffs' claim for IIED stems from defendant's failure to provide written notification that plaintiffs owe defendant nothing, and from defendant's failure to stop reporting an outstanding debt to TRW. Defendant argues this is not the type of conduct considered "extreme and outrageous."

To support this assertion, defendant states that its conduct was not "violent and shocking," as *Star v. Rabello, supra,* requires. Defendant notes that in *Star,* the Nevada Supreme Court gave examples of "violent and shocking conduct," sufficient

to find liability. However, the facts of *Star* and the facts of the examples cited involved situations where the plaintiff witnessed the defendant inflict injury on a third party. In *Star*, when the Court required the defendant's conduct to be violent and shocking, the facts involved a plaintiff who was a bystander to an injury. *Star* and the "violent and shocking" test is relevant to a claim for NIED (see below), not IIED.

■ Plaintiffs assert that the facts in this case, as a matter of law, entitle them to recover for IIED. Nine months passed without defendant fixing its records to indicate that no debt was owed. In addition to the passage of time, plaintiffs emphasize that during this nine month period, their attorney sent two letters to defendant's attorney requesting that the situation be remedied. Further, defendant's attorney allegedly told Judge Thompson that he would remedy the situation. Defendant's attorney does not deny this. Defendant twice told TRW incorrectly that plaintiffs still owed defendant money. Finally, plaintiffs assert that defendant knew Peter was emotionally unstable. Therefore, less outrageousness is required.

■ Defendant counters that any knowledge defendant may have had about Peter's mental state came from facts that occurred prior to the settlement of the first suit. Since the settlement released defendant from claims arising from facts occurring before the settlement, defendant asserts, the knowledge, if any, cannot be used against it. We disagree. The settlement and release only prevented plaintiffs from bringing claims based directly on facts occurring before the settlement. Any knowledge defendant had before the settlement did not disappear once the settlement was signed. If defendant had knowledge of Peter's alleged mental illness before the settlement, it did not lose that knowledge because of the settlement.

Thus, plaintiffs argue, a reasonable jury could find only that plaintiffs win. We disagree. A jury could reasonably conclude that defendant's conduct was not extreme and outrageous enough to warrant a finding that defendant intentionally inflicted emotional distress on plaintiffs. Thus, the outrageousness of defendant's conduct should be measured by a jury.

*Intent or Reckless Disregard*—While the parties do not specifically address this element, the facts indicate that a jury could reasonably infer that defendant intentionally or recklessly did not remove plaintiffs' debt from its records, and intentionally or recklessly reported to TRW that plaintiffs still owed money. However, a jury could just as reasonably conclude, at a maximum, that defendant was merely negligent in failing to remedy the situation. Thus, intent should be decided by a jury.

*Severe emotional distress*—As defendant notes, plaintiffs' emotional distress must be severe. Further, the distress plaintiffs suffer must be reasonable in light of the circumstances. Defendant asserts that plaintiffs suffered only embarrassment, sleeplessness and anxiety. Further, defendant argues, for plaintiff to suffer severe emotional distress as a result of defendant's actions is unreasonable. Finally, defendant asserts that all evidence of distress plaintiffs presented occurred before the settlement, and is not admissible.

Plaintiffs counter that physical injury is not required for IIED. Kathy testified in her deposition after the settlement that both she and Peter suffered embarrassment, humiliation and stress over their credit situation for nine months. The treating psychologist, Dr. Doornink, testified in his September 11, 1990 deposition that Peters "disorders were of a less severity until he found out about TRW, and then the anxiety increased again." Plaintiffs presented much evidence in the form of Kathy's deposition testimony concerning Peter's inability to deal with people, or even leave his home. Finally, Kathy also testified that the problems with defendant caused plaintiffs much anxiety, considering the problems they encountered in attempting to obtain a loan.

We are not convinced that plaintiffs have proven as a matter of law that they have suffered severe emotional distress. Resolving all inferences in favor of defendant,

plaintiffs have not shown that, as a matter of law, they have suffered severe emotional distress. However, we also are not convinced that as a matter of law they have failed to file affidavits and evidence showing they may have suffered severe emotional distress. In light of the evidence that plaintiffs have presented, resolving all inferences in their favor, we conclude that a jury should decide whether plaintiffs have suffered severe emotional distress. Further, only a jury can determine whether plaintiffs' distress, to the extent there is any, resulted from acts occurring before or after the settlement of the earlier case. Enough evidence appears that emotional distress resulted from acts occurring after the settlement to send the issue to the jury.

*Causation*—Defendant asserts, and plaintiffs do not dispute, that plaintiffs encountered credit problems with other creditors. For example, First Interstate Bank also incorrectly indicated in its records that plaintiffs owed money when they did not owe money. Further, defendant argues, Peter admitted becoming upset at almost anything, including the problems with defendant. Thus, defendant concludes, a reasonable jury could not determine that defendant caused plaintiffs' emotional distress, to the extent any distress exists.

Plaintiffs counter that only defendant acted wrongfully by taking so long to remedy the problem, especially when plaintiffs constantly reminded defendant of the problem. Further, plaintiffs argue, evidence exists that the problem with defendant was one of the three main causes of distress for Peter. Finally, plaintiffs assert that evidence exists indicating that defendant's failure to change its records caused Peter severe emotional distress.

■ Under tort law, a defendant's actions need not be the sole cause of a plaintiff's injuries or damages. Defendant's actions need be only the primary cause, or a substantial material factor. The evidence presented indicates that more than one cause of plaintiffs' alleged emotional distress exists. However, the evidence could lead a jury reasonably to infer that defendant's acts were a substantial cause in fact

of plaintiffs' injuries and damages. Although, by no means must a jury infer that defendant's actions were a substantial cause in fact of plaintiffs' injuries and damages. Thus, a material issue exists as to the causation of plaintiffs' emotional distress, if any exists.

A material factual issue exists as to the outrageousness of defendant's conduct, defendant's intent/recklessness, the severity of plaintiffs' emotional distress, and causation. Thus, neither side is entitled to summary judgment on the IIED claim.

*Negligent Infliction of Emotional Distress*

■ Defendant has moved for summary judgment on plaintiffs' claim of negligent infliction of emotional distress ("NIED") on the grounds that Nevada does not recognize a cause of action for NIED unless the plaintiff is a witness to defendant inflicting injury on a close relative of the plaintiff, and suffers physical injury as a result of the incident. Defendant argues that each plaintiff here is not a bystander plaintiff, but a "direct victim" plaintiff, for which Nevada does not recognize a cause of action for NIED. Further, defendant asserts, no evidence exists indicating that either plaintiff suffered a physical injury as a result of defendant's alleged negligent infliction of emotional distress.

Plaintiff counters that while the Nevada Supreme Court has not expressly recognized a cause of action for NIED on the facts of this case, neither have they rejected such a claim. Plaintiffs assert that the Nevada Supreme Court would recognize such an action. Thus, since we have this case on diversity, we must attempt to predict how the Nevada Supreme Court would decide this issue.

Unfortunately, the Court has never squarely addressed whether a "direct victim" of defendant's negligence can sue defendant for damages resulting from severe emotional distress, in the absence of physical injuries. However, the Court has encountered cases where plaintiff has asserted the right to recover under an NIED type theory.

In *Star, supra,* plaintiff alleged intentional infliction of emotional distress. The Court recognized a cause of action where plaintiff suffers emotional distress from witnessing the outrageous conduct of defendant cause injury to a close relative of plaintiff. In such a case, the Court held that plaintiff must show the defendant's conduct was violent and shocking. While the Court did not call this cause of action NIED, *Star* was the Nevada Supreme Court's first acknowledgement of a NIED type claim.

In *Nelson v. City of Las Vegas,* 99 Nev. 548, 665 P.2d 1141 (1983), the Nevada Supreme Court again encountered a NIED type situation. The Court held that a witness to a close relative being injured by defendant's outrageous conduct may recover from defendant for emotional distress if the witness suffers physical injury or illness as a result of the emotional distress. *Id.* at 555, 665 P.2d 1141. The Court noted the less extreme the outrage, the more appropriate it is to require evidence of physical injury. *Id.* Once again, the Court did not call this cause of action NIED.

However, at page 556, footnote 4, 665 P.2d 1141, the Court noted that plaintiff had failed to allege facts sufficient to establish a cause of action for NIED because the basis of her recovery would be the defendant's liability in negligence. Thus, the Court roughly distinguished between the "bystander" case described in the two paragraphs above, and other types of cases. This statement is evidence that the Court would reject a claim of NIED when the plaintiff could state a claim for plain negligence.

We agree with this analysis. Under the facts of our case, plaintiff can, and has, stated a claim for negligence against defendant based on its failure to remove the debt from its records and its continuation of reporting the debt to TRW. In proving the elements of negligence, plaintiffs would be presenting essentially the same evidence as they would if they were attempting to prove a claim for NIED. Namely, under negligence, plaintiffs have to show defendant breached a duty owed to plaintiffs.

This corresponds to the outrageous conduct requirement of NIED. Further, under both theories, plaintiff must show causation and damages (severe emotional distress). Thus, NIED does not add anything to an ordinary negligence claim.

In *State v. Eaton,* 101 Nev. 705, 710 P.2d 1370 (1985), the Court first used the term NIED in relation to "bystander" cases. It noted that in NIED claims, a court should use concepts of negligence, proximate cause and foreseeability, traditional negligence buzzwords. *Id.* at 713.

In *Smith v. Clough,* 106 Nev. 568, 796 P.2d 592 (1990), the Nevada Supreme Court came its closest to deciding whether a "direct victim" asserting NIED states a cause of action. In *Smith,* plaintiffs were gardening in their backyard when they heard a loud crash from the front of their house. Upon examining the situation, they noticed that defendant, who had been drag racing, crashed her car into plaintiffs' home, causing extensive damage. Plaintiffs sued for NIED, claiming they were direct victims of defendant's negligence, and suffered severe emotional distress as a result of such negligence.

In finding for defendant as a matter of law, the Nevada Supreme Court held:

> "We reject the [plaintiffs'] contention and decline the invitation to follow certain case law from other jurisdictions which they claim is in their favor ... We believe the better rule is to allow recovery only in cases which pertain to emotional distress arising from harm to another person ..."

*Id.,* 796 P.2d at 593. The Court made this statement in the context of addressing whether a plaintiff should recover for NIED when the emotional distress arises from defendant's harm to property. However, the Court acknowledged that the only NIED law in Nevada relates to the bystander situation. *Id.* This language indicates that the Nevada Supreme Court would not extend NIED beyond the bystander situation.

Also lending support to the argument against allowing plaintiffs to state a cause of action for NIED is plaintiffs' lack of

physical injury. In *Payton v. Abbott Labs*, 386 Mass. 540, 437 N.E.2d 171 (1982), plaintiffs' mothers had ingested DES during pregnancy. Plaintiffs sought damages for emotional distress arising from the likelihood that they would have problems with their reproductive organs. No problems had yet manifested themselves, but plaintiffs had incurred costs and suffered traumatic experiences in being tested for various problems.

Plaintiffs asserted that defendants were negligent in marketing DES without testing it or putting a warning label on it. Plaintiffs alleged that defendants'· negligence caused plaintiffs' emotional distress. Thus, this is a "direct victim" case, similar to the facts of our case. The Court held that to recover for NIED, the plaintiffs had to show evidence of physical harm resulting from the condition which caused the emotional distress. Since plaintiffs had not yet suffered physical harm, they lost.

Similarly, W. Prosser, W. Keeton, D. Dobbs, R. Keeton, D. Owen, Prosser and Keeton on Torts, Ch. 9, § 54, at 362 (5th ed. 1984) notes that in the direct victim scenario, a cause of action for NIED when no physical injury exists has been recognized in the following instances only: negligently transmitting a message over a wire regarding someone's death, negligently mishandling a corpse, negligently embalming a body, negligently shipping cargo, and negligently running over a body. No jurisdiction recognizes a cause of action for NIED in our fact scenario.

In our case, plaintiffs have not alleged physical harm resulting from defendant's alleged negligent conduct. Thus, under unanimous authority, they cannot state a cause of action for NIED. We conclude that in light of the Nevada case law on NIED, general case law on NIED, and the fact that NIED in this situation appears to be repetitive of ordinary negligence, the Nevada Supreme Court would not recognize a cause of action for NIED in this situation.

IT IS, THEREFORE, HEREBY ORDERED that defendant's motion for summary judgment (document # 35) on plaintiffs' first cause of action, intentional infliction of emotional distress, is DENIED.

IT IS FURTHER ORDERED that plaintiffs' cross-motion for summary judgment (document # 39) on plaintiffs' first cause of action, intentional infliction of emotional distress, is DENIED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment (document # 35) on plaintiffs' second cause of action, negligent infliction of emotional distress, is GRANTED.