Lieutenant Paula A. COUGHLIN, USN, a Florida Citizen, Plaintiff,

v.

The TAILHOOK ASSOCIATION, INC., a California corporation; Hilton Hotels U.S.A., Inc., a Delaware corporation; Hilton Hotels Corporation, a Nevada corporation, and Las Vegas Hilton Corporation, a Nevada corporation, Defendants.

No. CV–S–93–44–PMP (RJJ).

United States District Court, D. Nevada.

April 6, 1993.

Steven L. Victor, Nancy L. Stagg, Rudnick, Platt & Victor, San Diego, CA, Joseph I. Cronin, Minden, NV, for plaintiff.

Eugene Wait, Wait & Shaffer, Reno, NV, John E. Gormley, Rawlings, Olson & Cannon, Las Vegas, NV, for defendants.

## ORDER

PRO, District Judge.

This action arises from an alleged attack on Plaintiff, Lieutenant Paula A. Coughlin ("Coughlin") at the Tailhook Convention held at the Las Vegas Hilton Hotel in September 1991. On January 21, 1993, Coughlin filed a Complaint naming Tailhook Association, Inc., ("Tailhook") and Hilton Hotels, U.S.A., Inc., Hilton Hotels Corporation and Las Vegas Hilton Corporation ("Hilton") as Defendants, and asserting six causes of action for negligence, negligent infliction of emotional distress, punitive damages and nuisance.

Before this Court is Defendant Tailhook's Motion to Dismiss Counts III, V, and VI (# 17) of Plaintiff's Complaint, filed February 18, 1993. Defendant Hilton joined this Motion to Dismiss pursuant to a notice of joinder (# 24) filed March 9, 1993. Plaintiff Coughlin filed an Opposition (# 22) on March 9, 1993. In addition to opposing Defendants' Motion to Dismiss, Coughlin's Opposition contains a Motion to Strike Defendants' Motion to Dismiss and an alternative request to amend her complaint. Tailhook filed its Reply (# 25) on March 22, 1993.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

1. **Plaintiff's Motion to Strike Tailhook's Motion to Dismiss**

Coughlin served the Summons and Complaint in this action on Tailhook on January 28, 1993. Coughlin contends that Fed.

R.Civ.Pro. 12(a) requires Tailhook to have filed a response on or before February 17, 1993. Because Tailhook filed no response by that date, Coughlin argues that Defendants have waived their right to make a Motion to Dismiss, and requests this Court to order Tailhook to file and serve an Answer to the Complaint within 10 days of the date of this Order.

Although it disputes the exact details, Tailhook concedes that it filed its responsive pleading one day late when it filed the instant Motion to Dismiss on February 18, 1993.[1] It argues, however, that Coughlin has not sustained any prejudice as a result of this delay, and it contends that a decision on the merits of its motion will be in the best interests of judicial economy.

Because this Court finds that Coughlin has not been prejudiced by the one-day delay in the filing of Tailhook's Motion to Dismiss, Coughlin's Motion to Strike will be denied, and the Court will consider Tailhook's Motion to Dismiss on its merits.

■ In considering Defendants' Motion to Dismiss, the factual allegations of Coughlin's Complaint must be presumed to be true, and this Court must draw all reasonable inferences in her favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987). The issue is not whether Coughlin will ultimately prevail, but whether she is entitled to offer evidence in support of her claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Consequently, the Court may not grant a Motion to Dismiss for failure to state a claim "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The Court does not, however, necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the Complaint. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

**2. Defendant's Motion to Dismiss Count III**

■ Defendants argue that under Nevada law, Coughlin may not recover under a theory of negligent infliction of emotional distress. They contend that Nevada limits recovery for negligent infliction to damages suffered by a bystander only, and that a person who suffers harm as a direct result of an allegedly negligent act cannot recover under a theory of negligent infliction. They cite various cases to support the proposition that where a common law negligence action is available to a direct plaintiff, Nevada courts treat emotional distress as one element of damages under the negligence action, and not as a separate cause of action.

Coughlin contends that each case cited by Defendants is factually distinguishable, and that neither the Nevada state courts nor this Court has ever considered the issue of whether a direct victim who suffers harm as a result of a negligent act can maintain an action for negligent infliction of emotional distress.

The Honorable Edward C. Reed, Jr., United States District Judge for the District of Nevada, recently considered the question of whether Nevada law recognized a cause of action for negligent infliction of emotional distress brought by the direct victim of the alleged negligence. *See Etchart v. Bank One, Columbus, N.A.*, 773 F.Supp. 239 (D.Nev.1991); *see also Hutton v. General Motors Corp.*, 775 F.Supp. 1373 (D.Nev. 1991). Judge Reed noted that the Nevada Supreme Court has neither recognized nor rejected such an action. Because *Etchart*, like the present case, was a diversity action, Judge Reed was faced with the task of determining how the Nevada Supreme Court would decide this issue. *Etchart* held that the Nevada Supreme Court would not recognize a cause of action for negligent infliction of emotional distress brought by a direct victim of the defendant's negligence, where that victim could state a claim for plain negligence. Like *Etchart*, the instant case presents this Court with the task of determining

---

1. Defendants Hilton Hotels, USA, Hilton Hotels Corporation, Hilton Nevada Corporation, and Las Vegas Hilton Corporation timely filed their answers (numbers 9, 10, 11, and 12, respectively) on February 17, 1993.

how the Nevada Supreme Court would decide this issue.

This Court finds that the Nevada Supreme Court would not recognize an independent cause of action for a plaintiff seeking to maintain an action for negligent infliction of emotional distress, where that plaintiff was the direct victim of a defendant's negligence.

To date, the Nevada Supreme Court has recognized a negligent infliction claim only when brought by or on behalf of a "bystander"; i.e., one who is not a "direct victim" of that negligence. *See, e.g., State v. Eaton,* 101 Nev. 705, 710 P.2d 1370 (1985) (recognizing a "bystander" cause of action for negligent infliction of emotional distress); *Star v. Rabello,* 97 Nev. 124, 625 P.2d 90 (1981) (bystander who witnesses a close relative being injured can recover for intentional infliction); *see also Falline v. GNLV Corp.,* 107 Nev. 1004, 1013, 823 P.2d 888 (1991) (refusing to recognize a discrete cause of action for the negligent infliction of emotional distress involving the tortious delay or denial of workmen's compensation claims, and stating that emotional distress is more appropriately treated as an element of damages rather than a separate cause of action itself).

The policies underlying the recognition of a negligent infliction of emotional distress action for bystanders are not present in the case of those directly injured by negligent acts. Bystanders have no other cause of action to recover for the defendant's negligence, because by definition, the reason that they are considered "bystanders" is because they suffer no direct harm resulting from the negligent behavior. Those who are direct victims of the negligent acts, however, will always be able to pursue a remedy for both physical and mental/emotional injuries under a common law theory of negligence. A direct plaintiff who suffers mental/emotional injuries sufficient to state a claim for negligent infliction for emotional distress will necessarily be able to state a sufficient claim of plain, common law negligence.[2] *See Burgess v. Superior Court,* 2 Cal.4th 1064, 9 Cal.Rptr.2d 615, 618, 831 P.2d 1197, 1200 (1992) (en banc) ("we have repeatedly recognized that 'the negligent causing of emotional distress is not an independent tort, but the tort of negligence.' The traditional elements of duty, breach of duty, causation, and damages apply.") Therefore, permitting a direct plaintiff to bring a negligent infliction action would be redundant. This Court sees no reason to believe that the Nevada Supreme Court would recognize a redundant cause of action.[3]

### 3. Motion to Dismiss Count V

■ Coughlin seeks an award of punitive damages against Tailhook in Count V of her Complaint. To this end, she alleges that Tailhook had actual knowledge as far back as 1985 that certain activities had taken place at annual Tailhook Conventions that "posed a real and substantial danger" to Convention attendees, other Hilton guests, and the general public, and exposed these people to a risk of serious injury. She also alleges that despite this knowledge, Tailhook indulged, promoted, and protected the dangerous and

---

2. Plaintiff argues that she has merely pled both causes of action, and that a complaint may state alternative, hypothetical, or inconsistent theories of recovery. She further contends that it would be unfair to penalize her at this early stage in the proceedings for alleging multiple causes of action based on negligence.

This Court agrees, of course, that if Nevada explicitly recognized a direct victim tort of negligent infliction of emotional distress, a plaintiff would not be precluded from pleading both this claim and a claim for common law negligence, although presumably that plaintiff would not be entitled to recover twice for the same mental/emotional injury. This, however, does not help to establish whether the Nevada Supreme Court would recognize such a tort in the first place, and a plaintiff may not plead claims which are non-existent.

3. Unlike negligence, this redundancy is not necessarily present in the arena of intentional torts. A plaintiff may be able to state a cause of action for *intentional* infliction of emotional distress to recover for her mental/emotional suffering as a result of a defendant's intentional actions, but may not be able to state a cause of action for an intentional tort independent of the intentional infliction claim. In a case where a defendant's conduct is outrageous and extreme, but does not constitute a separately cognizable intentional tort, the claim of intentional infliction of emotional distress is the only avenue through which a direct victim of an intentional act may be able to recover for her mental/emotional injuries. This is not true in the negligence scenario, as a direct plaintiff who suffers mental/emotional injuries will be able to recover for those injuries under a common law theory of negligence.

abusive conduct, and took no steps to control or abolish the behavior because of fear of financial loss. Finally, Coughlin alleges that Tailhook acted in "conscious disregard of the known rights of the Plaintiff and others similarly situated, and acted in conscious disregard for known safety standards and measures." This conduct, Coughlin alleges, constitutes malice and oppression, and justifies an award of punitive damages.

In order to maintain an action for punitive damages under Nevada law, Coughlin must allege facts demonstrating that Tailhook was guilty of "oppression, fraud or malice, express or implied." *See* N.R.S. § 42.005(1). Unfortunately, Nevada case law defining these terms is less than clear.

The controversy in this area of Nevada law is over what constitutes "malice." Nevada case law distinguishes between "malice in law" and "malice in fact."[4] No matter what label is applied, the basic difference between the two concepts is that malice in fact requires the Plaintiff to show a deliberate motive or intent to vex, harass, annoy, or injure, and malice in law is satisfied if a person consciously takes excessive risks at the expense of injury to another, without having an intent to injure.

Coughlin urges this Court to look to *Ainsworth v. Combined Insurance Company of America,* 104 Nev. 587, 763 P.2d 673 (1988), *cert. denied,* 493 U.S. 958, 110 S.Ct. 376, 107 L.Ed.2d 361 (1989), and *Granite Construction Co. v. Rhyne,* 107 Nev. 651, 817 P.2d 711 (1991), which recognize that malice in law gives rise to a cause of action for punitive damages. Tailhook, on the other hand, suggests that this Court follow *Craigo v. Circus–Circus Enterprises, Inc.,* 106 Nev. 1, 786 P.2d 22 (1990). The *Craigo* Court held that punitive damages under § 42.005 are allowable only where the wrongful conduct was done with the deliberate intent to injure. The issue is important because it is clear from the pleadings that if malice in fact is required, the punitive damage claim of Coughlin's Complaint must be dismissed.

The *Craigo* plurality[5] clearly adopted a malice in fact standard for awarding punitive damages. The opinion first noted that a "critical difference between malice in fact and malice in law is the element of purposeful intent to injure always present in the former." *Craigo,* 106 Nev. at 7, 786 P.2d 22. It then decided that "it is this court's intention to restrict awards of punitive damages attributable to malice in fact to those extreme cases that convincingly demonstrate conduct motivated by hatred and ill-will and the *deliberate intent to injure.*" *Id.* at 8, 786 P.2d 22 (emphasis added). Finally, Justice Steffen, the author of the plurality opinion, noted that:

> We disapprove our prior pronouncements that would indicate that malice in fact can be shown by a willful disregard of the rights of others or a conscious disregard of safety measures unless it can be shown that in connection therewith there was a deliberate intention to injure, vex, annoy, or harass.

*Id.* at 9, 786 P.2d 22.

Although Justice Springer concurred in the result reached in *Craigo,* he did so only because he believed the record in the case did not support a finding of malice under any definition. He strongly disagreed with the manner in which Justice Steffen interpreted the statutory term "malice," to include only those cases in which the defendant is shown to have harbored a deliberate intent to injure, vex, annoy, or harass. *Id.* at 9, 786 P.2d 22. Justice Springer concluded that "[i]t is clear to me that 'malice, express or implied' necessarily goes beyond the intentional injury by one person of another and that the statute [N.R.S. § 42.005] and our cases require a broader definition of malice than that offered by the plurality opinion." *Id.*

Less than two years later, the Nevada Supreme Court issued *Granite Construction v. Rhyne,* 107 Nev. 651, 817 P.2d 711 (1991). This case found the roles of Justices Spring-

---

4. These terms are sometimes referred to as "implied malice" and "express malice."

5. In *Craigo,* Justice Steffen authored the plurality opinion, in which then-Chief Justice Young and

Justice Springer concurred. Justice Mowbray filed a dissenting opinion, and Justice Rose did not participate in the decision.

er and Steffen reversed, with Justice Springer authoring the opinion and Justice Steffen filing a dissent. In *Granite Construction,* the Supreme Court upheld a district judge's determination that a jury's imposition of punitive damages was supported by law. The Court found that the record contained facts that showed the defendant "consciously and deliberately disregarded known safety procedures" when it failed to construct a fence it was obligated by contract to construct. *Id.* at 653, 817 P.2d 711. Justice Springer's opinion in *Granite Construction* nowhere mentions *Craigo v. Circus–Circus.*[6]

Justice Steffen filed a vigorous dissenting opinion, in which he characterized Justice Springer's opinion as an "attempt[ ] to perpetuate the fantasy that Nevada statutory and decisional law has recognized implied malice as a discrete basis for awarding punitive damages." Justice Steffen's strong disagreement with the analytical underpinnings of Justice Springer's *Granite Construction* opinion illustrates the conflict on the Nevada Supreme Court over what a plaintiff is required to allege and prove in order to sustain a claim of punitive damages.

The unfortunate inconsistency of the Nevada Supreme Court between *Granite Construction* and *Craigo* creates an equally unfortunate degree of confusion as to precisely what a plaintiff is required to allege and prove to support a claim for punitive damages. Of course, this Court would prefer to decide the issue aided by clearly enunciated legal principles provided by the Nevada Supreme Court or the Nevada Legislature. Since the area is in a state of flux, however, this Court must follow the Nevada Supreme Court's most recent pronouncement. *See* 1A Moore's Federal Practice ¶ 0.307[3] (2d ed. 1991) ("where there are inconsistent decisions of a state court or of state courts of equal rank, federal courts usually apply the most recent decision") (internal citations omitted). Accordingly, in consideration of the holding in *Granite Construction* and the fact that Coughlin has alleged that Tailhook consciously disregarded the safety of Con-

vention invitees and other Hilton guests, this Court must deny Tailhook's motion to dismiss Count V of Coughlin's Complaint.

### 4. Motion to Dismiss Count VI

 Count VI in Coughlin's Complaint states a cause of action against Tailhook and Hilton for nuisance. Specifically, Coughlin claims that the Defendants violated N.R.S. § 202.450 et seq. Section 202.450 defines and makes criminal certain activities under the heading of "public nuisance," and subsequent subsections make specific acts subject to criminal penalties. Coughlin alleges that Defendants violated the public nuisance statutes because "they knew the Las Vegas Hilton was a place where vagrants and criminals resort and further knew such vagrants and criminals annoyed, injured, and endangered the safety health, comfort and repose of a substantial number of guests and invitees . . ." *See* Complaint, ¶ 64. Coughlin further alleges that she suffered damages as a direct and proximate result of this nuisance.

 Defendants move to dismiss Count VI, claiming that the statute upon which Coughlin relies is a criminal statute and does not give rise to a civil cause of action. Coughlin responds by citing N.R.S. § 193.-090.[7] She argues that this section provides that "a civil right of action is not proscribed merely because criminal penalties have been established under the Title governing crimes and punishments." *See* Plaintiff's Opposition to Defendants Motion to Dismiss (# 22) at 15.

> N.R.S. § 193.090 states:
> The omission to specify or affirm in this Title any liability to any damages, penalty, forfeiture or other remedy imposed by law, *and allowed to be recovered or enforced in any civil action or proceeding,* for any act or omission declared punishable in this Title shall not affect any right to recover or enforce the same.

(Emphasis added). This Court agrees with Coughlin's interpretation of this statute inas-

---

6. It is worth mentioning for purposes of clarity that *Granite Construction* does not explicitly overrule *Craigo v. Circus–Circus,* although it certainly leaves grave doubts as to the vitality of *Craigo.*

7. N.R.S. § 208.145 contains a similar provision.

much as she argues that the criminalization of a particular action does not prevent a party injured by that action from seeking civil damages. As the portion of the statute underlined indicates, a plaintiff's ability to bring a civil action is not negated by the presence of a criminal statute. N.R.S. § 193.090, however, does not provide that the presence of a criminal statute *creates* a civil cause of action where none otherwise exists. Furthermore, this Court finds that there is no indication that § 202.450 et seq. was intended to create a private cause of action.

Thus, the question that remains is whether Nevada recognizes a tort of nuisance under the facts alleged by Coughlin. Other than the criminal public nuisance statutes discussed above, the only other nuisance cause of action recognized under Nevada law of which this Court is aware is a civil cause of action for private nuisance. *See* N.R.S. § 40.140. This is an action concerning real property, and clearly is not implicated by the facts as alleged by Coughlin in her Complaint and Opposition papers. The Court, therefore, concludes that Coughlin cannot maintain the claim for nuisance set forth in Count VI of her Complaint.

IT IS THEREFORE ORDERED THAT Plaintiff's Motion to Strike (# 22) Defendant Tailhook's Motion to Dismiss is denied.

IT IS FURTHER ORDERED THAT Defendants' Motion to Dismiss Count III and Count VI of Plaintiff's Complaint (# 17) is hereby granted.

IT IS FURTHER ORDERED THAT Defendant's Motion to Dismiss Count V of Plaintiff's Complaint (# 17) is denied.

IT IS FURTHER ORDERED THAT Plaintiff shall have to and including April 30, 1993, within which to file an Amended Complaint.