John DOES I THROUGH VI, and Jane Doe I, Plaintiffs,

v.

KTNV–CHANNEL 13, American Broadcasting Corporation, and Does I through X, and Roe Corporations I Through X, inclusive, Defendants.

No. CV–S–94–347–PMP (RJJ).

United States District Court, D. Nevada.

Sept. 21, 1994.

As Amended Oct. 28, 1994.

Gerald I. Gillock, Nia C. Killebrew, Barker, Gillock, Koning & Brown, Las Vegas, NV, for plaintiffs.

John R. Dawson, James L. Huston, Foley & Lardner, Milwaukee, WI, Frederic I. Berkley, Berkley & Gordon, Las Vegas, NV, for KTNV–Channel 13.

Steve Morris, Morris, Brignone & Pickering, Las Vegas, NV, for American Broadcasting Corp.

## ORDER

PRO, District Judge.

Before the Court is Defendant WTMJ, Inc.'s Motion for Summary Judgment (# 25), filed along with a Statement of Undisputed Material Facts (# 26), on August 1, 1994.[1] Plaintiffs filed an Opposition (# 29) and Re-

1. The named defendant, KTNV–Channel 13, is a division of WTMJ, Inc., who filed the instant Motion for Summary Judgment. Hereinafter, for purposes of clarity, the Court will refer to defendant as "KTNV".

sponse to Defendant's Statement of Undisputed Material Facts (# 28) on August 22, 1994. Plaintiffs also filed the Affidavit of Forrest R. Oden (# 30) on August 24, 1994. KTNV filed a Reply (# 31) on September 2, 1994, and a Declaration of Donna Cacciatori (# 33) on September 9, 1994.

## I. FACTS

Plaintiffs are undercover vice officers employed by the Las Vegas Metropolitan Police Department ("Metro") who agreed to be featured in an episode of *American Detective,* a nationally broadcast series documenting quality detective work. According to the Amended Complaint (# 19), on or about February 24, 1993, Plaintiffs entered into an agreement with the producer of *American Detective,* American Detective Productions, Inc. ("ADP"), that Plaintiffs would appear on an episode of *American Detective,* but that Defendants would ensure that Plaintiffs' appearances on the episode that was to air in Las Vegas, Nevada, would be digitized in order to blur their identities, specifically their faces, so they would be unrecognizable to any viewers. *See* Plaintiffs' Amended Complaint (# 19), at 4. Plaintiffs allege that they were assured that their anonymity would be preserved during the airing of the show on Channel 13 in Las Vegas. *Id.* at 4–5. On May 10, 1993, the episode of *American Detective* featuring Plaintiffs aired in Las Vegas at 8:30 p.m., except the version did not blur Plaintiffs' faces.

Plaintiffs filed their Amended Complaint on May 27, 1994. In their First Cause of Action, Plaintiffs allege that Defendants, including KTNV, breached the conditions of the contract by failing to air the blurred version of the episode. The Second Cause of Action alleges that Defendants negligently failed to air the blurred version of the episode. The Third and Fourth Causes of Action allege that Defendants concealed the fact that the unblurred version was to air,

(1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) that breach was the legal cause of the plaintiff's injury; and (4) *the plaintiff suffered damages.*
864 P.2d at 797 (emphasis added).

and misrepresented that they were going to air only the blurred version of the episode. Finally, while not entirely clear, Plaintiffs' Fifth Cause of Action alleges that Defendants aired the unblurred version of the episode despite making representations that Defendants had the capacity and were able to air only the blurred version. As a result of Defendants' actions, Plaintiffs allege that they have sustained severe emotional distress.

KTNV concedes it made a mistake in locally airing the unblurred version of *American Detective* while it was being broadcast nationwide with the consent of Plaintiffs on the evening of May 10, 1993. KTNV admits that their error was unfortunate and has apologized to Plaintiffs. KTNV maintains, however, that what we have here is a failure to communicate which is not actionable before this Court.

## II. *DISCUSSION*

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.,* 693 F.2d 870, 883 (9th Cir.1982). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that

there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *California Arch. Bldg. Prod. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988).

■ If the party seeking summary judgment meets this burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270 (9th Cir. 1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *Id.*

■ A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1305–06 (9th Cir.1982); *Admiralty Fund v. Jones,* 677 F.2d 1289, 1293 (9th Cir.1982).

■ All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor,* 677 F.2d 1297, 1298 (9th Cir.1982).

The trilogy of Supreme Court cases cited above establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1). *See also Avia Group Int'l, Inc. v. L.A. Gear Cal.*, 853 F.2d 1557, 1560 (Fed.Cir.1988).

 Since federal jurisdiction is invoked upon diversity of citizenship, a federal court is bound to apply the substantive law of the state in which it sits. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Strassberg v. New England Mutual Life Ins. Co.*, 575 F.2d 1262 (9th Cir.1978). In the absence of controlling forum state law, a federal court sitting in diversity must use its own best judgment in predicting how the state's highest court would decide the substantive issue. *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir.1986), *modified*, 810 F.2d 1517 (1987); *Takahashi v. Loomis Armored Car Service*, 625 F.2d 314, 316 (9th Cir.1980). In performing that function, this Court may be aided by reviewing well-reasoned decisions from other jurisdictions. *Takahashi*, 625 F.2d at 316.

## B. Effect of Ongoing Discovery

At various times in their Opposition, Plaintiffs imply that the instant Motion may be premature because discovery is ongoing and because there has been an "inability of the plaintiffs to conduct timely discovery". Plaintiffs' Opposition (# 29), at 10. Under Rule 56(f), this Court may refuse to grant a party's motion for summary judgment on the ground that the opposing party requires additional time to conduct discovery. Fed. R.Civ.P. 56(f); *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir.1987). Here, however, Plaintiffs have not formally moved for a continuance based upon the need for further discovery, and "informal ... requests to the court for more time to conduct discovery [fall] short of compliance with Rule 56." *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 277 (9th Cir.1988). There-

fore, the Court will consider the KTNV's Motion for Summary Judgment on the merits.

## C. First Cause of Action

Plaintiffs' First Cause of Action is a breach of contract claim. Specifically, Plaintiffs assert the following:

> On or about February 24, 1993, Plaintiffs ... entered into an agreement with the producer of American Detective that Defendants, and each of them, would ensure that their appearance on the show American Detective, that was to air in Las Vegas, Nevada, would appear digitized in order to blur their identity, specifically their faces, so they would be unrecognizable to any viewers.

Plaintiffs' Amended Complaint (# 19), at 4.

KTNV argues that they should be granted summary judgment on this claim because KTNV never entered into any contract with either Plaintiffs or ADP. *See* Affidavit of Marie Shea, attached to Defendant's Motion for Summary Judgment (# 25), at 1–2.

 Plaintiffs make two arguments in response. First, they assert that a question of fact exists as to whether KTNV "has agreed to air the program as represented by the producers of the show to the officers who are arguably third party beneficiaries of any subsequent agreement between the network and station." The Court finds, however, that Plaintiffs have not come forward with any evidence of the existence of any subsequent agreement that would confer third party beneficiary status on Plaintiffs. Without supporting evidence, Plaintiffs' argument fails because "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *British Airways*, 585 F.2d at 952.

 Nor have Plaintiffs put forth any evidence to support their second argument that they have raised an issue of fact "as to whether the producers of American Detective, ABC and KTNV Channel 13, are actual, if not, apparent agents of one another." Plaintiffs' Opposition (# 29), at 13. Under Nevada law, apparent authority is "that au-

thority which a principal holds his agent out as possessing or permits him to exercise or to represent himself as possessing, under such circumstances as to estop the principal for denying its existence." *Dixon v. Thatcher,* 103 Nev. 414, 742 P.2d 1029, 1031 (1987). Here, Plaintiffs point to no evidence from which the Court could find that ADP was acting with KTNV's apparent authority when it made any representations to Plaintiffs, or that KTNV allowed ADP to act in such a capacity. Plaintiffs' apparent authority argument must therefore fail.

Accordingly, because Plaintiffs have failed to put forth any evidence from which this Court could conclude that a contract existed obligating KTNV air the blurred version of the *American Detective* episode, and because they have failed to demonstrate that ADP had possessed the apparent authority to enter into a contract on KTNV's behalf, or that ADP was acting as KTNV's agent, Plaintiffs' breach of contract claim must fail and summary judgment in favor of KTNV must be granted as to Plaintiffs' First Cause of Action.

**D. Second Cause of Action**

With regard to Plaintiffs' Second Cause of Action alleging negligence, KTNV first argues that, as a matter of law, it had no duty not to air the undigitized version of the episode and that, absent such a duty, it cannot be held liable on a negligence theory for any injuries the officers may have suffered. In the alternative, KTNV argues that because Plaintiffs only claim to have suffered "severe emotional distress" as a result of KTNV's negligence, their cause of action is truly one for negligent infliction of emotional distress—a cause of action not recognized in Nevada except in bystander cases. Because the Court finds that Plaintiffs' Second Cause of Action seeks to impose liability upon KTNV for negligent infliction of emotional distress, and because Plaintiffs have failed to demonstrate that KTNV had a duty to air only the blurred version of the episode, summary judgment must be granted in KTNV's favor.

In their Second Cause of Action, Plaintiffs state the following:

> Defendants, and each of them, negligently failed to air the blurred version of American Detective. As a direct result of the negligence of Defendants, and each of them, the show American Detective was aired in the Las Vegas area exposing the undercover vice officers faces causing them to lose their anonymity which is essential to their job success and safety and which also effects the safety of themselves and their families. But for the negligence of Defendants ... Plaintiffs have and will suffer a substantial increase in the risk associated with their personal safety of their family and loved ones.

Plaintiffs' Amended Complaint (# 19), at 6.

With regard to damages for this cause of action, Plaintiffs further assert that:

> As a direct and proximate result of the negligence of the Defendants, and each of them, Plaintiffs have suffered and will continue to suffer severe emotional distress in a sum to be determined at the time of trial.

Plaintiffs' Amended Complaint (# 19), at 7. Plaintiffs plead no other form of damages. Indeed, in their Opposition, Plaintiffs reassert that "[t]he foreseeable emotional distress alone arising from the officers' faces being shown and distributed in Las Vegas is enough to deny [D]efendant's motion based upon lack of damages." Plaintiffs' Opposition (# 29), at 19.

██ This Court does not doubt for a moment that the airing of the *American Detective* segment in question in unblurred form caused each of the Plaintiffs understandable emotional distress. This Court, however, has repeatedly held that Nevada does not recognize an independent cause of action for negligent infliction of emotional distress, except in bystander cases. *See Hallett v. United States Department of Navy,* 850 F.Supp. 874, 881–882 (D.Nev. 1994); *Devon v. Unbelievable, Inc.,* 820 F.Supp. 528, 530 (D.Nev.1993); *Coughlin v. Tailhook Ass'n, Inc.,* 818 F.Supp. 1366, 1369 (D.Nev.1993). In *Coughlin,* this Court examined the relevant cases which discussed the tort of negligent infliction of emotional distress as it presently exists in Nevada, and concluded that:

the Nevada Supreme Court would not recognize an independent cause of action for a plaintiff seeking to maintain an action for negligent infliction of emotional distress, where the plaintiff was the direct victim of a defendant's negligence.

*Coughlin,* 818 F.Supp. at 1369. In reaching this decision, the Court noted that the Nevada Supreme Court has only recognized a negligent infliction claim brought by a " 'bystander,' i.e., one who is not a 'direct victim' of that negligence," and that "the policies underlying the recognition of a negligent infliction of emotional distress action are not present in the case of those directly injured by negligent acts." *Id.*

 Here, as in *Hallett,* Plaintiffs do not dispute that they were the "direct victims" of KTNV's allegedly negligent acts. Thus, under Nevada law, they cannot maintain an action for negligent infliction of emotional distress. Moreover, while Plaintiffs might have been able to maintain a straight-forward negligence action against KTNV with emotional distress as component of damages, they cannot do so because they have failed to present evidence from which this Court could conclude that KTNV owed Plaintiffs a duty to air only the blurred version of the episode. *See Doud v. Las Vegas Hilton Corp.,* 109 Nev. 1096, 864 P.2d 796 (1993) (reciting the elements of a negligence cause of action). Consequently, because Nevada does not recognize a cause action for intentional infliction of emotional distress brought by a "direct victim", and because Plaintiffs have failed to demonstrate the existence of any legally cognizable duty on KTNV's part, summary judgment must be granted in favor of KTNV on Plaintiffs' Second Cause of Action.

### E. Third Cause of Action

In their Third Cause of Action, Plaintiffs allege misrepresentation by intentional omission. Specifically, Plaintiffs allege the following:

> Defendants, and each of them, concealed and/or suppressed to Plaintiffs ... prior to the airing of the television show that the undigitized version of the show would air locally. Defendants breached their duty by intentionally concealing and suppressing the fact that they were going to air the undigitized version with the knowledge that they were to air only the digitized version locally. Defendants failed to notify Plaintiffs in a timely manner of their intentions so as to avoid Plaintiffs taking exception with the undigitized version. If Plaintiffs were aware of the Defendants['] intent to air the undigitized version, they would have taken immediate action to stop the airing of the show.

Plaintiffs' Amended Complaint (# 19), at 7.

It is axiomatic that an individual may only be subject to liability for a nondisclosure when they are "under a duty to the other to exercise reasonable care to disclose the matter in question." Restatement (Second) of Torts § 551 (1977). "The principle is basic in the American law of fraud—as it relates to nondisclosure—that a charge of fraud is maintainable where a party who knows material facts is under a duty, under the circumstances, to speak and disclose his information, but remains silent." 9 Stuart M. Speiser et al., *The American Law of Torts* § 32:70, at 349 (1992).

 The Court finds that Plaintiffs have failed to present any evidence from which it could conclude that KTNV was under a duty to disclose that it was going to air the undigitized version of the show. The circumstances surrounding the airing of the program did not create a duty on the part KTNV to make any disclosures to Plaintiffs. As stated previously in this Order, there was no contract between KTNV and Plaintiffs, nor were any representations made by KTNV. In fact, there is no evidence indicating that KTNV had any contacts with Plaintiffs prior to the airing of the show. Without the presence of any duty to speak, KTNV cannot be held liable on a theory of intentional omission. Summary judgment on this claim will therefore be granted in KTNV's favor.

### F. Fourth Cause of Action

 Plaintiffs allege that KTNV intentionally misrepresented "that they were willing, able and were going to air only the blurred version of the show American Detec-

tive locally in Las Vegas." Plaintiffs' Amended Complaint (# 19), at 8–9. To maintain a cause of action based upon an intentional misrepresentation, Plaintiffs must demonstrate that KTNV "made a false representation ... with knowledge or belief that the representation was false or without a sufficient basis for making the representation." *Blanchard v. Blanchard,* 108 Nev. 908, 839 P.2d 1320, 1322 (1992). Here again, Plaintiffs intentional misrepresentation claim must fail for the simple reason that Plaintiffs have not demonstrated that KTNV made any representations to them at all. Furthermore, because the Court has already found that there is no evidence that ADP was acting as KTNV's agent, any misrepresentations made by ADP cannot be imputed to KTNV. Therefore, Plaintiffs' intentional misrepresentation claim must fail and summary judgment in favor of KTNV must be granted on Plaintiffs' Fourth Cause of Action as well.

### G. Fifth Cause of Action

In their Fifth Cause of Action, Plaintiffs allege the following:

> Defendants, and each of them, held themselves out, pretended and or otherwise informed the Plaintiffs they possessed a requisite ability and means to air the show American Detective in Las Vegas digitizing the faces of vice officers in order to preserve their anonymity. Defendants, and each of them, negligently, recklessly and carelessly induced Plaintiffs to reasonably believe Defendants had the capacity and were able to air only the blurred version of the show American Detective in Las Vegas, Nevada. Despite said representations, Defendants, and each of them, without the knowledge of Plaintiffs[,] aired an undigitized version of the show American Detective locally in Las Vegas on May 10, 1993.

Plaintiffs' Amended Complaint (# 19), at 10–11.

While it is not entirely clear to the Court just what theory of liability Plaintiffs are attempting to invoke in their Fifth Cause of Action, as in their Third and Fourth Causes of Action, Plaintiffs are attempting to

impose liability on KTNV for some sort of misrepresentations. As with the aforementioned causes of action, Plaintiffs claims must fail because they have failed to come forth with even a scintilla of evidence that KTNV made any representations whatsoever or "held themselves out" in any manner to Plaintiffs. As Plaintiffs' Fifth Cause of Action is predicated upon the existence upon such representations, it must also fail.

IT IS THEREFORE ORDERED THAT Defendant KTNV's Motion for Summary Judgment (# 25) is Granted.