Suzanne HALLETT, a California citizen, Plaintiff,

v.

The UNITED STATES DEPARTMENT OF NAVY, Defendant.

Lisa C. REAGAN, a California citizen, Plaintiff,

v.

The UNITED STATES DEPARTMENT OF NAVY, Defendant.

Marie Coleen WESTON, a California citizen, Plaintiff,

v.

The UNITED STATES DEPARTMENT OF NAVY, Defendant.

Judy MAS, Plaintiff,

v.

The UNITED STATES DEPARTMENT OF NAVY, Defendant.

Rhonda RAMA and Darren Rama, Plaintiffs,

v.

The UNITED STATES DEPARTMENT OF NAVY, Defendant.

No. CV-S-93-802-PMP (RLH).

United States District Court, D. Nevada.

April 18, 1994.

Cal J. Potter, Potter Law Offices, Las Vegas, NV, for plaintiffs Hallett, Reagan and Weston.

S. Frank Stapleton, Las Vegas, NV, for plaintiffs Mas, Rama and Rama.

Marie Louise Hagen, Asst. U.S. Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, DC, for defendant.

PRO, District Judge.

This action arises from a series of events alleged to have occurred at the annual Tailhook Conventions held at the Las Vegas Hilton Hotel ("the Hilton") in September 1990 and September 1991. Plaintiff Suzanne Hallett ("Hallett") was a guest at the Hilton in September 1990 when she was allegedly asked by Naval officers to attend social events related to the Convention. Hallett claims that upon entering the third floor hallway of the Hilton to attend these social events, she was assaulted by a number of men, many of whom she claims were Naval officers, who touched and grabbed her as she was forced down the hallway through a so-called "gauntlet."

The remaining female Plaintiffs, Lisa C. Reagan ("Reagan"), Marie Coleen Weston ("Weston"), Judy Mas ("Mas"), and Rhonda Rama ("Rama"), each claim that they were assaulted in a similar manner at the 1991 Convention. Plaintiff Rhonda Rama further alleges that sometime after having to endure the "gauntlet" she was taken to the fourteenth floor of the Hilton where she was raped. Plaintiffs each filed separate Complaints naming the United States Department of the Navy ("the United States") as Defendant, and asserting four causes of action for sexual assault and battery, negligence, negligent infliction of emotional distress and punitive damages.[1] Plaintiff Darren Rama alleges a Fifth Cause of Action for loss of consortium. Plaintiffs invoke the jurisdiction of this Court pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680.

Presently before the Court is Defendant United States' Motion to Dismiss (*Hallett* # 21) filed on February 16, 1994. The Motion seeks dismissal of all claims. Plaintiffs Hallett, Reagan and Weston filed an Opposition (*Hallett* # 26) on March 16, 1994. Plaintiffs Mas and the Ramas filed their Opposition (*Mas* # 20) on March 18, 1994. The United States filed Replies (*Hallett* ## 28 & 29) on April 7, 1994.

## A. *Standard of Review*

■ In considering Defendant's Motion to Dismiss, the factual allegations of Plaintiffs' Complaints must be presumed to be true, and this Court must draw all reasonable inferences in favor of Plaintiffs. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987). The issue is not whether Plaintiffs will ultimately prevail, but whether they are entitled to offer evidence in support of their claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Consequently, the Court may not grant a Motion to Dismiss for failure to state a claim "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The Court does not, however, necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in Plaintiffs' Complaints. *Western Mining Council v. Watts*, 643 F.2d 618, 624 (9th Cir.), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

## B. *Discussion*

1. *Defendant United States' Motion to Dismiss Plaintiffs First Cause of Action.*

■ Plaintiffs' First Cause of Action, entitled "Sexual Assault and Battery," seeks damages for the sexual assaults and batteries allegedly perpetrated upon the Plaintiffs by Naval officers at the 1990 and 1991 Tailhook Conventions. The United States argues that Plaintiffs are precluded from recovering under such a theory because the United States has not waived its sovereign immunity for acts arising out of assault and battery. *See* 28 U.S.C. § 2680(h).[2]

The Supreme Court has summarized the extent to which the United States has waived its sovereign immunity by virtue of enacting the FTCA as follows:

The FTCA gives federal district courts jurisdiction over claims against the United States for money damages "for injury or

---

1. Each Plaintiff filed separately against the United States in this matter, except for the Ramas who filed their Complaint jointly. As a result, there are five separate case files representing each case against the United States. On March 18, 1994, the Court consolidated the five cases for the purposes of pretrial discovery and pretrial motions and designated *Hallett v. United States Department of Navy*, CV–S–93–802–PMP (RLH), as the base file. However, a few of the pleadings referred to in this Order are dispersed throughout the various case files. As a result, for the purposes of clarity, when indicating a document

number, the Court will indicate in which case file the document is located.

2. 28 U.S.C. § 2680 states in relevant part:

§ 2680. Exceptions.

The provisions of this chapter and section 1346(b) of this title shall not apply to—

\* \* \* \* \* \*

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights....

loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*Sheridan v. United States,* 487 U.S. 392, 398, 108 S.Ct. 2449, 2454, 101 L.Ed.2d 352 (1988) (quoting 28 U.S.C. § 1346(b)). The Court further noted, however, that this broad jurisdictional grant " 'shall not apply to ... [a]ny claim arising out of assault, battery' or other specified intentional torts." *Id.* (quoting 28 U.S.C. § 2680(h)).

Plaintiffs' First Cause of Action clearly seeks to impose direct liability upon the United States for the sexual assaults and batteries allegedly perpetrated by Naval officers at the Convention social events. Because the actions for which Plaintiffs seek damages are included within a category of intentional torts that have been specifically exempted from the FTCA's jurisdictional grant, this Court lacks subject matter jurisdiction over them. Therefore, Plaintiffs' First Cause of Action must be dismissed.

### 2. *Defendant United States' Motion to Dismiss Plaintiffs' Second Cause of Action.*

In their Second Cause of Action, Plaintiffs seek to impose liability upon the United States for negligence. The United States argues that this cause of action is also precluded by the assault and battery exception, 28 U.S.C. § 2680(h), or alternatively, that Plaintiffs cannot establish liability under Nevada law.

In *Sheridan v. United States,* 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988), the Supreme Court held the assault and battery exception does not bar recovery "when a negligence claim against the government arises out of an incident of battery but is in

no way contingent on the perpetrator's federal employment status, i.e., when the government's liability is based on its breach of a duty owed the victim that is independent of its relationship, if any, to the perpetrator ...." *Franklin v. United States,* 992 F.2d 1492, 1498 (10th Cir.1993) (citing *Sheridan,* 487 U.S. at 400–03, 108 S.Ct. at 2454–56).

In *Sheridan,* the Supreme Court noted that both the district court and the court of appeals "assumed that the alleged negligence would have made the defendant liable under the law of Maryland, and also assumed that the Government would have been liable if [the perpetrator] had not been a Government employee." 487 U.S. at 395, 401, 108 S.Ct. at 2452, 2455. The Court assumed that the government's liability existed under state law prior to reaching the issue of preclusion under the assault and battery exception.[3] Thus, before it reaches the question of whether Plaintiffs Second Cause of Action is precluded by the assault and battery exception, this Court must determine whether Plaintiffs have stated a cause of action for negligence under state law.

Under the Federal Tort Claims Act, the United States is liable for its torts "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. In determining whether a private person would be liable, the Court applies "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *see also Brock v. United States,* 601 F.2d 976, 978 (9th Cir.1979). Thus, under the facts of this case, the negligence of the United States is determined by Nevada law.

■ Generally, in a negligence action, Plaintiffs have the burden of demonstrating the following: "(1) that the defendant had a duty to exercise due care with respect to the plaintiff; (2) that the defendant breached this duty; (3) that the breach was both the actual and proximate cause of the plaintiff's injury; and (4) that the plaintiff was damaged." *Joynt v. California Hotel & Casino,* 108 Nev.

---

**3.** However, this assumption proved to be erroneous. On remand, the district court granted the government's motion for summary judgment and concluded that the plaintiffs had failed to state a claim for relief under Maryland law. *See Sheri-* *dan v. United States,* 773 F.Supp. 786, 778–89 (D.Md.1991). The district court's decision was later affirmed by the Fourth Circuit. *See Sheridan v. United States,* 969 F.2d 72, 74 (4th Cir. 1992).

539, 835 P.2d 799, 801 (1992). Plaintiffs premise their negligence claims against the United States upon four theories of liability: 1) failing to control the amount of alcoholic beverages served to attendees of the social activities; 2) failing to supervise the activities occurring on the third floor of the Las Vegas Hilton; 3) failing to provide security personnel to control attendees' behavior; and 4) failing to warn plaintiffs of the dangers on the third floor of the Hilton.

  a. Nevada law does not recognize a cause of action for failing to control the distribution of alcoholic beverages.

██ In *Hinegardner v. Marcor Resorts,* 108 Nev. 1091, 844 P.2d 800 (1992), the Nevada Supreme Court reaffirmed its holding in *Hamm v. Carson City Nugget, Inc.,* 85 Nev. 99, 450 P.2d 358 (1969), that Nevada does not recognize a cause of action arising out of the sale or furnishing of intoxicating beverages. 844 P.2d at 802. The court reasoned that it is the province of the legislature, and not the courts, to impose "some responsibility on a vendor who willfully or·carelessly serves alcohol to an intoxicated patron or minor ..." *Id.* at 803. Thus, to the extent Plaintiffs' are attempting to impose liability upon the United States for negligence under such a theory, their claims must be dismissed.

  b. Plaintiffs' negligence claims based upon failure to supervise, failure to control, and failure to warn.

Plaintiffs contend that the United States owed them a duty to supervise and control the activities of those present at the social activities attendant to the Tailhook Convention, and a duty to warn Plaintiffs of the potential dangers they faced as attendees. Specifically, Plaintiffs argue that there were senior Naval officers and security officers present who witnessed the wrongful acts allegedly perpetrated by other Naval officers and civilians. They argue that these "onlookers," those not directly responsible for the alleged assaults, "were acting within the scope of their employment, and were responsible as a direct duty of that employment to protect Plaintiffs from harm." Plaintiffs' Opposition (*Mas* # 20) at 22.

██ In Nevada, as in most states, an "indispensable predicate" to finding liability for negligence "is the existence of a duty of care owed by the alleged wrongdoer to the person injured." *Mangeris v. Gordon,* 94 Nev. 400, 580 P.2d 481, 483 (1978) (citation omitted). The general rule under the common law is that "one person owed no duty to control the dangerous conduct of another, nor to warn those endangered by such conduct." *Id.* (citing *Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976); Rest.2d, Torts (1965) § 314). An exception to this rule arises in cases "where the defendant bears some special relationship to the dangerous person or to the potential victim." *Id.* (citing *Tarasoff, supra;* Rest.2d, Torts (1965) §§ 314A, 315).

Plaintiffs have failed to allege any facts from which this Court could find the existence of a "special relationship" between the allegedly negligent onlookers and those who actually perpetrated the alleged assaults, or between the onlookers and Plaintiffs themselves. Plaintiffs appear to argue that such a relationship existed between the onlookers and the alleged assailants because the onlookers "possessed the responsibility for enforcement of naval regulations and/or the supervisory or command authority even when off duty ..."

██ The Ninth Circuit, however, has made clear that "the military relationship does not constitute a special relationship merely because of the military command's general right to control the conduct of military personnel." *Doggett v. United States,* 875 F.2d 684, 693 (9th Cir.1989). The military relationship does not create a cause of action "where liability would not lie under state law." *Id.* (quoting *Louie v. United States,* 776 F.2d 819, 826 (9th Cir.1985)). Thus, as they have failed to allege facts which would give rise to a duty on the part of the onlookers to provide security, control behavior, or issue warnings, by virtue of any "special relationship," and the military relationship cannot create such a duty, Plaintiffs have failed to state a claim under Nevada law for negligence under that theory of liability.

880

■ Plaintiffs, however, continually refer to themselves throughout their Opposition as "invitees" of the United States, in an apparent attempt to argue that this status imposed a duty upon the United States to control the behavior of the alleged assailants and/or warn Plaintiffs of the dangers present on the third floor of the Hilton. It is clear that Nevada law imposes a duty upon owner, occupiers, or possessors of land to act "as a reasonable man in view of the probability of injury to others ..." *Moody v. Manny's Auto Repair*, 871 P.2d 935, 943 (1994).[4] The Restatement defines a possessor as, *inter alia*, "a person who is in occupation of land with intent to control it." Restatement (Second) of Torts § 328E.[5]

■ Plaintiffs' allege that a number of suites on the third floor of the Hilton were occupied by Naval personnel. While the assaults allegedly occurred in the public hallway adjacent to these suites, it may be possible for Plaintiffs to demonstrate that the United States effectively controlled the area in and around the Administrative suites on the third floor, thus giving rise to a duty on the part of the United States to act reasonably toward others who may venture upon the premises. Therefore, at this time the Court cannot say as a matter of law that

Plaintiffs cannot maintain their negligence actions based upon a duty of United States to act reasonably as the occupant or possessor of the premises where the alleged assaults were to have occurred.

■ Furthermore, the assault and battery exception does not preclude recovery in this instance because the United States' liability, if it exists, is predicated upon a theory that is independent of the employment status of the intentional tortfeasor: namely, the duty imposed by Nevada law upon a possessor of land to act in a reasonable manner toward those who enter upon the premises. *See Sheridan*, 487 U.S. at 400–03, 108 S.Ct. at 2454–56. Accordingly, to the extent Plaintiff alleges the existence of such a duty on the part of the United States, the United States motion as to Plaintiffs' Second Cause of Action will be denied.

3. *Defendant United States' Motion to Dismiss Plaintiffs' Third Cause of Action.*

■ Plaintiffs Third Cause of Action seeks to impose liability upon the United States under a theory of negligent infliction of emotional distress. The United States argues that Plaintiffs may not recover under

4. The holding in this case is significant in that it alters the state of Nevada law by abolishing the common law distinction between invitees, licensees, and trespassers for the purposes of imposing a duty upon the owner or possessor of land. The Nevada Supreme Court reasoned:

We discern no justification for continuing to adhere to rules of landowner and occupier liability based upon the artificial classification of plaintiffs as either trespassers, licensees, or invitees, and hinging recovery on this status. We conclude that all persons in this society have an obligation to act reasonably and that an owner or occupier of land should be held to the general duty of reasonable care when another is injured on that land.

*Moody*, 871 P.2d at 943.

In reaching its holding, the court quoted with approval the standard for owner or occupant liability in California which holds that:

The proper test to be applied to the liability of the possessor of land ... is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and although, the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such

status have some bearing on the question of liability, the status is not determinative.

*Id.* (quoting *Rowland v. Christian*, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561, 568 (1968)). Thus, the court concluded that in Nevada "determinations of liability should primarily depend upon whether the owner or occupier of the land acted reasonably under the circumstances." *Id.*

5. At least one treatise has noted the following with regard to the legal duties imposed upon the occupation or control of land:

In order to have the occupation or control of premises necessary to impose a legal duty with respect to the condition or use of those premises, one must ordinarily have to power and the right to admit individuals to the premises or to exclude them from the premises. To support the imposition of liability on the basis of occupation and control of premises, independently or title or ownership, the nature or type of the contractual arrangements under which possession or control were acquired by the defendant, and the size and location of the space occupied, are immaterial.

*Premises Liability Service* § 100:5, at 10 (1993) (footnotes omitted).

such theory because Nevada law does not recognize this tort in a context such as the one presented by the facts of this case. In support of their position, they point to this Court's recent decision in another case of an alleged assault at the 1991 Tailhook Convention, *Coughlin v. Tailhook Ass'n, Inc.*, 818 F.Supp. 1366 (D.Nev.1993).

In *Coughlin, supra*, this Court examined the relevant cases which discussed the tort of negligent infliction of emotional distress as it presently exists in Nevada. This Court concluded the following:

the Nevada Supreme Court would not recognize an independent cause of action for a plaintiff seeking to maintain an action for negligent infliction of emotional distress, where the plaintiff was the direct victim of a defendant's negligence.

*Coughlin*, 818 F.Supp. at 1369. In reaching its decision, this Court noted that the Nevada Supreme Court has only recognized a negligent infliction claim brought by a " 'bystander,' i.e., one who is not a 'direct victim' of that negligence," and that "the policies underlying the recognition of a negligent infliction of emotional distress action are not present in the case of those directly injured by negligent acts." *Id.*

Plaintiffs do not contest the assertion that they were the "direct victims" of the United States' allegedly negligent acts. Rather, they assert that since this Court's decision in *Coughlin*, the Nevada Supreme Court has implicitly recognized the existence of a negligent infliction action where the claim is brought by a "direct victim." To support their position, Plaintiffs rely upon *Chowdhry v. NLVH, Inc.*, 109 Nev. 478, 851 P.2d 459 (1993), a case decided by the Nevada Supreme Court one month after this Court's ruling in *Coughlin*.

*Chowdhry* involved claims for damages brought by a doctor against various defendants, including a hospital who refused to expunge a letter of reprimand from his record. Among the theories of liability relied upon by the plaintiff were claims for intentional and negligent infliction of emotional distress.

The Nevada Supreme Court's discussion of the issue of infliction of emotional distress is not extensive. The court began by noting that they have not yet decided "whether a plaintiff may recover for negligent infliction of emotional distress for negligent acts committed directly against the plaintiff." 109 Nev. at ——, 851 P.2d at 462. The court continued its analysis as follows:

In *State v. Eaton* [101 Nev. 705, 710 P.2d 1370 (1985) ], we first recognized a cause of action for negligent infliction of emotional distress where a bystander suffers "serious emotional distress which results in physical symptoms caused by apprehending the death or serious injury of a loved one due to the negligence of the defendant." The "physical impact" requirement has also been applied where, as here the negligent act is alleged to have been committed directly against the plaintiff. In the context of intentional infliction of emotional distress, we have stated that "[t]he less extreme the outrage, the more appropriate it is to require evidence of physical injury or illness from the emotional distress."

*Id.* (citations omitted). Plaintiff contends that through this language, the Nevada Supreme Court implicitly recognized that negligent infliction claims could be brought by "direct victims." The Court disagrees.

In the next paragraph of the opinion, the Nevada Supreme Court held that the evidence presented by plaintiff was insufficient, as a matter of law, to satisfy the "physical impact requirement." *Id.* The court never held that a negligent infliction claim can be maintained when brought by a direct victim. Instead the court determined that even if such a cause of action could be maintained, the "physical impact requirement" was applicable, and the evidence presented by the plaintiff on that issue was insufficient to sustain the claim. Thus, when presented with an opportunity to affirm or deny that negligent infliction claims could be brought by a direct victim, it appears the Nevada Supreme Court declined to address the issue. Consequently, this Court finds that *Chowdhry* does not alter the state of Nevada law regarding actions brought by direct victims for negligent infliction of emotional distress. Absent

a decision by the Nevada Supreme Court to the contrary, such actions cannot be maintained, *Coughlin,* 818 F.Supp. at 1369, and thus Plaintiffs' Third Cause of Action must also be dismissed.

### 4. *Defendant United States' Motion to Dismiss Plaintiffs Fourth Cause of Action.*

■ Plaintiffs' Fourth Cause of Action against the United States seeks an award of punitive damages. The United States correctly points out that the FTCA states unequivocally that the United States "shall not be liable for ... punitive damages." 28 U.S.C. § 2674. Accordingly, Plaintiffs' Fourth Cause of Action shall also be dismissed.

### 5. *Defendant United States' Motion to Dismiss Plaintiffs' Fifth Cause of Action.*

In addition to the claims for assault and battery, negligence, negligent infliction of emotional distress and punitive damages asserted by the female Plaintiffs in this case, Plaintiff Darren Rama asserts a Fifth Cause of Action for Loss of Consortium. *See* Rama Amended Complaint (# 2). The United States argues that Rama's Fifth Cause of Action should be dismissed because Rama failed to comply with the administrative resolution provisions of 28 U.S.C. § 2675(a).[6]

■ In *Jerves v. United States,* 966 F.2d 517 (9th Cir.1992), the Ninth Circuit reiterated its language in *Caton v. United States,* 495 F.2d 635, 638 (9th Cir.1974), where it noted that a proceeding cannot be filed against the United States without first filing a claim with the appropriate federal agency and "either receiving a conclusive denial of the claim from the agency or waiting for six months to elapse without a final disposition of the claim being made." *Jerves,* 966 F.2d

at 519. This is a jurisdictional requirement and cannot be waived. *Id.*

■ Plaintiff Darren Rama filed an administrative claim with the Navy in a letter dated September 7, 1993. *See* Letter from Cal J. Potter, III, to Secretary of Navy, dated September 7, 1993, attached as Exhibit "B" to Defendant's Motion to Dismiss (*Hallett* # 21). Plaintiff Rama's Amended Complaint (*Rama* # 2) was filed with this Court on the same date. It is an understatement to say that Rama has failed to comply with the jurisdictional prerequisites of filing suit under the FTCA. Not only did he commence his action without first receiving a final denial of his claim and without allowing six months to elapse, the filing of this action on the same date as the administrative claim indicates that Rama had no intention of submitting the claim to the administrative processes. These actions fly in the face of one of Congress' central objectives in enacting § 2675(a): "to encourage administrative settlement of claims against the United States and thereby to prevent an unnecessary burdening of the courts." *Jerves,* 966 F.2d at 520 (citing *Anderson v. United States,* 803 F.2d 1520, 1522 (9th Cir.1986)).

Rama argues that even though he failed to comply with § 2675(a) he should be allowed to maintain his action because the United States has not been prejudiced by the filing, and the United States received notice of Rama's claim more than six months ago. The Court rejects this argument for the same reasons the Ninth Circuit rejected similar arguments in *Jerves,* where the plaintiff argued that her action should not be dismissed because "no substantial progress had been made in the action by the time the [administrative agency] denied her claim ..." 966 F.2d at 521.

6. 28 U.S.C. § 2675(a) reads, in relevant part: An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate

Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

In rejecting this argument, the Ninth Circuit "emphasized that the administrative claim requirements of Section 2675(a) are jurisdictional in nature, and thus must be strictly adhered to." 966 F.2d at 521. (citation omitted). Moreover, since the FTCA waives sovereign immunity, "[a]ny such waiver must be strictly construed in favor of the United States." *Id.* (citation omitted). The Ninth Circuit employed strong language when it concluded the following:

> Section 2675(a) establishes explicit prerequisites to the filing of suit against the Government in district court. *It admits of no exceptions.* Given the clarity of the statutory language, we "cannot 'enlarge that consent to be sued with the Government, through Congress, has undertaken so carefully to limit.'"

*Id.* (citations omitted) (emphasis added). Thus, on the facts of this case, the Court must dismiss Plaintiff Darren Rama's Fifth Cause of Action for lack of subject matter jurisdiction. *Caton,* 495 F.2d at 638–39.

6. *Substitution of United States as Proper Defendant.*

Defendant correctly notes that the United States Department of Navy is not the proper defendant in this case. Plaintiffs, in their Opposition, acknowledge their error in bringing this action against the Department of Navy rather than the United States itself, and asks the Court to substitute the United States as the proper defendant. As the Court cannot discern any prejudice that will result from substitution, it will construe the relevant portion of Plaintiffs' Opposition (*Mas* # 20) as a Motion to Substitute, and said Motion will be granted.

IT IS THEREFORE ORDERED THAT Defendant's Motion to Dismiss (*Hallett* # 21) is Granted to the extent that all claims asserted by Plaintiffs Suzanne Hallett, Lisa Reagan, Marie Weston, Judy Mas, Rhonda Rama and Darren Rama are dismissed except that Defendant's Motion is Denied to the extent that Plaintiffs' Second Cause of Action seeks to impose liability under Nevada law upon Defendant as an occupant or possessor of land.

IT IS FURTHER ORDERED THAT Plaintiffs' Motion to Substitute the United States as Defendant (*Mas* # 20) is granted.