**Joyce POTTLE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. Action No. 95–2295 (JEI).**

United States District Court,
D. New Jersey.

March 12, 1996.

Law Offices of Michael S. Berger by Kevin Haverty, Haddonfield, NJ, for plaintiff.

Faith S. Hochberg, United States Attorney by Louis Bizzari, Assistant U.S. Attorney, Camden, New Jersey, for defendant.

## OPINION

IRENAS, District Judge:

Plaintiff was assaulted by a navy recruitment officer during a physical examination that was part of the recruitment process. She brought suit against the United States for negligence in the training and supervision of recruitment officers, for negligence in its failure to provide proper safeguards for activities involving the recruitment of women into the armed services, and for other undefined negligence. The government contends that the Court lacks subject matter jurisdiction because the government is immune from suit, as § 2680(h) of the Federal Tort Claims Act provides that the Act shall not apply to any claim arising out of assault or battery, and the plaintiff's claims arise out of the assault of plaintiff committed by Officer Lupo. In addition, the government argues that the officer's actions were outside the scope of his employment, and the government should not be liable for a claim based on such acts. The Court finds that the assault and battery by Officer Lupo occurred while he was acting within the scope of his employment, and that his assault on the plaintiff cannot be the basis of a claim against the United States. Whether the negligence claim against the government is framed as respondeat superior negligence, as improper hiring, training, or supervision, or as premises liability, it arose out of Lupo's assault and battery and is barred by 28 U.S.C. § 2680(h). The Court lacks subject matter jurisdiction to hear the case and summary judgment will be granted to the defendant.

## I. PROCEDURAL HISTORY

Plaintiff filed a Notice of Claim with the United States Navy on August 15, 1994, to apprise the government of the fact that she was the victim of an improper touching and other indecent acts by Petty Officer Kevin Lupo during a recruiting interview, and that she sought an amount of $100,000 for her personal injuries. She filed a complaint on May 18, 1995, stating negligence claims against the government, and the claim was administratively denied on June 8, 1995. The complaint alleges that "[d]efendant United States of America negligently trained Petty Officer Lupo and/or failed to properly supervise the activities of its recruiters, including, but not limited to Petty Officer Kevin Lupo and/or failed to provide proper safeguards for activities involving the re-

cruitment of women into the armed services and/or was otherwise negligent." *Complaint,* ¶ 4.

Pursuant to a Scheduling Order of the Court, the case was set for a scheduling conference on September 28, 1995. Discovery was not to begin until the time of the scheduling conference. The scheduling conference was adjourned to October 31, 1995, at the request of the United States Attorney. At that conference, the government informed plaintiff that it planned to file a motion for summary judgment rather than engage in initial discovery. The motion for summary judgment was served on plaintiff's counsel in early November 1995, and was filed with the Court on January 2, 1996.

## II. STATEMENT OF FACTS

In November of 1992, Petty Officer Kevin Lupo recruited the plaintiff, Joyce Pottle, to join the United States Navy. As part of the recruitment process, Lupo drove plaintiff to the Naval recruiting center in Berlin, New Jersey. Lupo and Pottle were the only ones present at the center. There he conducted an interview and told plaintiff that he would have to carry out a body fat test on her to determine if she was eligible to join the Navy. Lupo instructed Pottle to enter an adjacent room and undress so he could perform the body fat examination. Pottle undressed down to her underwear and Lupo began the exam. During the course of the examination, which lasted more than 10 minutes, Lupo continued to tug at Pottle's underwear and complained that their presence was making the measurements difficult. Lupo told Pottle that he was becoming sexually aroused. Plaintiff terminated the interview. In subsequent weeks, Lupo called Pottle and told her not to tell anyone about the body fat examination because it was confidential. Plaintiff states that because of the actions of Petty Officer Lupo, she declined to be inducted into the Navy.

Shortly before this incident, the Navy had issued Navy Recruiting Command Instruction 1130.8D, effective October 28, 1992, which stated that "[r]ecruiting personnel will not perform body fat measurements on applicants of the opposite sex. EXAMPLE: If a female applicant requires measurement and there are no female recruiting personnel at the station, the measurement can be delayed . . . or can be taken by the applicant herself. Good judgment and common sense must prevail at all times." Defendant's Exhibit B. Lupo did not inform Pottle about this regulation prior to the body fat examination he conducted on her.

Sometime after the examination by Lupo, Pottle was contacted by Navy investigators who asked about her experience in the recruiting interview with Lupo. Pottle explained what happened, and the Navy investigators asked her if she would be willing to make a statement about the interview. Pottle said that she would and she then assisted in the investigation of Lupo. Lupo was tried by a military tribunal on June 8–9, 1994, for sexual assault on three different women during recruitment interviews, and he plead guilty to wrongfully measuring Pottle's hips, waist, and neck. The three incidents occurred between November 1992 and June 1993, and Pottle's assault was first in time. During the criminal proceedings, Lieutenant Evans, a Judge Advocates General Officer, told Pottle and her counsel that incidents such as those for which Lupo was prosecuted were not all that uncommon in recruiting activities. Lt. Evans also suggested that there were more women involved in Lupo's case than the three who had agreed to help with his prosecution.

## III. DISCUSSION

### A. Standard of Review

Under Fed.R.Civ.P. 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). At the summary judgment stage, it is not the role of the judge to weigh the evidence or to evaluate its credibility but to determine "whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). There is no issue for trial unless sufficient evidence favoring the nonmoving party exists such that a reasonable jury could return a verdict for that party. *Id.*

The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A genuine issue for trial does not exist "unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring).

### B. Section 2680(h) of the Federal Tort Claims Act

The Federal Tort Claims Act ("FTCA") gives federal courts jurisdiction over claims against the United States for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omissions occurred." 28 U.S.C. § 1346(b). Section 2680(h) of the FTCA provides that the Act shall not apply to any claim arising out of assault or battery.[1] The government contends that plaintiff's negligence claims arise out of Petty Officer Lupo's assault on Pottle, and are therefore barred by this exception. Plaintiff argues that the negligence claim is separate

from the assault and battery and could be based upon a general duty of care assumed by the government independent of Lupo's position with the government.

The government also argues that no matter how Officer Lupo's actions are characterized, they were outside the scope of his employment and the government is not liable under the FTCA for such acts. Lupo was conducting a body fat examination as part of his recruiting duties when he assaulted plaintiff. Although Lupo conducted the examination in a highly improper manner, the Court finds that he was acting within the scope of his employment. *See, e.g., Johnson by Johnson v. United States,* 788 F.2d 845 (2d Cir. 1986) (postal worker who sexually assaulted child while working was acting within scope of his employment). The Court therefore will consider whether plaintiff can maintain some form of negligence claim against the United States.

### C. Judicial Interpretations of 28 U.S.C. § 2680(h)

In *Shearer v. United States,* 723 F.2d 1102 (3d Cir.1983), the mother of an Army private brought a negligence action against the government after her son was murdered by another serviceman, Officer Heard. The plaintiff's son was off-duty and away from the base when he was kidnapped and murdered. The government was aware that Heard had been convicted of manslaughter while stationed in Germany, and the plaintiff argued that the government was negligent in failing to properly supervise Heard and in failing to warn others of the threat he posed.

The Third Circuit held that the plaintiff could bring a claim against the government based on its negligence in allowing an employee to remain in good standing despite

---

1. 28 U.S.C. § 2680(h) provides that the provisions of the Federal Tort Claims Act and § 1346(b) of the Act shall not apply to:

   (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and sec-

   tion 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

knowledge of his violent disposition and past wrongs, and for failing to warn others of his past and disposition. On appeal, a divided Supreme Court reversed the Third Circuit. *United States v. Shearer*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985). Four justices, in reviewing the legislative history of 28 U.S.C. § 2680(h), found that the express words of the statute barred the claim against the government. *Id.* at 54–57, 105 S.Ct. at 3040–42. The justices concluded that the exception did not permit suits based on an intentional tort of a government employee, and that the government's liability did not turn on the adequacy of supervision or training of its employees. *Id.*

Three years later, the Supreme Court again addressed the issue of the § 2680(h) assault and battery exception. *Sheridan v. United States*, 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988). In *Sheridan*, the plaintiffs had been shot at by a drunken, off-duty serviceman on a naval base. Three other government employees were aware that the serviceman had a gun in his possession while drunk, and they had not tried to stop him from leaving the naval hospital with the gun. The Court stated that "the negligence of other Government employees who allowed a foreseeable assault and battery to occur may furnish a basis for Government liability that is entirely independent of [the assailant's] employment status." *Sheridan*, 487 U.S. at 401, 108 S.Ct. at 2455. The Court found that by adopting regulations relating to firearms on the naval base, and by voluntarily undertaking to provide care to a person who was visibly drunk and armed, the government may have assumed responsibility to "'perform [its] "good Samaritan" tasks in a careful manner,'" and it left this determination open for decision on remand. *Sheridan*, 487 U.S. at 401, 108 S.Ct. at 2455, *quoting Indian Towing Co. v. United States*, 350 U.S. 61, 65, 76 S.Ct. 122, 125, 100 L.Ed. 48 (1955).

In *Sheridan*, the Court did not directly revisit its holding in *Shearer*. In making its holding, the Court stated: "Because Carr's employment status is irrelevant to the outcome, it is not appropriate in this case to consider whether negligent hiring, negligent supervision, or negligent training may ever provide the basis for liability under the FTCA for a foreseeable assault or battery by a Government employee." *Sheridan*, 487 U.S. at 403, n. 8, 108 S.Ct. at 2456 n. 8.

In his concurring opinion, Justice Kennedy addressed the negligent supervision situation and concluded that if "the allegation is that the Government was negligent in the supervision or selection of the employee and that the intentional tort occurred as a result, the intentional tort exception of § 2680(h) bars the claim." *Id.* at 406–07, 108 S.Ct. at 2458. To conclude otherwise, he continued, would be to eviscerate the exception since nearly every intentional tort by a government employee could be construed as a result of negligent supervision. *Id.*

Justice Kennedy then asked whether there was another state law basis upon which a negligence claim could be based that was unrelated to the employment relationship between the government and the tortfeasor. *Id.* Justice Kennedy considered Maryland's Good Samaritan law and the duty of care assumed by the Government even if the tortfeasor is a private person and not a government employee. *Id.* He concluded that when "the Government would be liable even if the tortfeasor had been a private person ... there is little danger that § 2680(h) will be circumvented." *Id.*

On remand, the plaintiffs argued that the government had breached the duty of care it owed to third parties based on its adoption of regulations restricting the possession of firearms on the naval base. The district court found that plaintiff had failed to state a claim under Maryland law and granted summary judgment to the government. The Fourth Circuit upheld the decision. *Sheridan v. United States*, 969 F.2d 72 (4th Cir.1992).

Since the *Sheridan* Supreme Court decision, courts have taken various approaches in applying the assault exception to the FTCA. Some courts have permitted plaintiffs to raise negligent supervision claims against the United States based on an employee's assault, *see, e.g., Knappick v. United States*, 875 F.2d 318, 1989 WL 54002 (9th Cir.1989) (permitting claim alleging that prison officials were negligent in hiring and supervision of officer who allegedly raped plaintiff), while

other courts have permitted only claims based on an independent duty of care, *see, e.g., Harris v. United States,* 797 F.Supp. 91, 95 (D.P.R.1992) ("it is clear that actions premised on negligence in the hiring and supervision of an employee with violent tendencies or similar background are barred because they are inextricably related to the assault and battery"). The Court will consider whether either claim can be raised here by plaintiff.

### 1. Negligent Hiring, Training, or Supervision

■ This Court first must decide whether it reads § 2680(h) as a ban on negligence suits against the government based on its hiring, training or supervision of a government employee who commits an intentional tort. Under New Jersey law, a municipality is liable for injuries caused by an employee due to that employee's lack of training or experience. *McAndrew v. Mularchuk,* 33 N.J. 172, 184, 162 A.2d 820 (1960). To maintain this cause of action, a plaintiff must present facts such as the appropriate training or supervision for an employee and the city's failure to provide it. *See, id.* at 185, 162 A.2d 820. Facts about training or the lack thereof cannot be inferred from the occurrence of a single incident, but plaintiff may be able to adduce facts during discovery that would be sufficient to maintain this claim.

The Supreme Court has held that a plaintiff "cannot avoid the reach of § 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery" because "in sweeping language" this exception to the FTCA "excludes any claim *arising out of* assault and battery." *United States v. Shearer,* 473 U.S. 52, 55, 105 S.Ct. 3039, 3041, 87 L.Ed.2d 38 (1985). The *Shearer* court noted that the legislative histo-

ry of § 2680(h) did not indicate that Congress intended to distinguish between *respondeat superior* claims and those based on negligent supervision. *Id.* Rather, the court found that the legislative history simply showed an intent to ban all claims based on "deliberate attacks by Government employees." *Id.*[2]

In reversing the Fourth Circuit in *Sheridan,* the Supreme Court quoted at length Chief Judge Winter's dissent from the circuit court's opinion. *Sheridan,* 487 U.S. at 397–98, 108 S.Ct. at 2453–54. Judge Winter had argued that cases based on negligent supervision can be easily distinguished from claims based on an independent duty of care because in such cases "the government's liability arises, if at all, *only* because of the employment relationship. If the assailant were not a federal employee, there would be no independent basis for a suit against the government.... [G]overnment liability is possible only because of the fortuity that the assailant happens to receive federal paychecks." *Sheridan v. United States,* 823 F.2d 820, 824 (4th Cir.1987) (C.J. Winter, dissenting), *rev'd by* 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988). It was these cases, Judge Winter concluded, that § 2680(h) was designed to preclude. *Id.*

It is clear that a *respondeat superior* claim cannot be brought against the government simply by a plaintiff's use of the words "negligent hiring, training, or supervision." This case differs from *Sheridan,* where the Court found that a claim could be brought against the government based on an independent duty of care and the failure of government employees who did not commit the tort to meet their duty of care. Any claim relating to the hiring, training, or supervision of Officer Lupo is tied to his employment status. Officer Lupo was acting in the scope of his

**2.** Recent congressional action supports this interpretation of the statute. In 1994, President Clinton signed a bill awarding damages to a child who had been sexually assaulted by a postal worker. For the Relief of Melissa Johnson, Priv. L No. 94–572, 104th Cong., 141 Cong. Rec. H 113–05, H 114. The postal worker was criminally prosecuted. The victim and her mother sought civil damages from the United States based on negligent supervision. The Second Circuit upheld the district court's determination that

the United States had not waived its sovereign immunity from such a suit because it arose out of an employee's assault and battery. *Johnson by Johnson v. United States,* 788 F.2d 845 (2d Cir. 1986). Congress recognized the limitation of its consent to suit, as set out in 28 U.S.C. § 2680(h), but believed that Ms. Johnson nonetheless should recover damages. Recognizing that this was only possible through the passage of a private law, Congress proceeded to pass a law permitting her recovery.

employment when he assaulted Joyce Pottle. The core of the assault and battery exception involved cases in which a government employee, while doing his job, commits an assault on another. This case fits squarely into those parameters. Therefore, the government has not consented to Pottle's suit and is immune from liability on a theory of negligent hiring, training, or supervision.

## 2. Employer's Duty of Care Independent of Employment Relationship

### a. Independent Duty of Care as Expressed in Government Directive

■ Just weeks prior to Officer Lupo's assault on plaintiff, the government issued a directive informing recruiters that they should not perform body fat measurements on recruits of the opposite sex. Plaintiff argues that this directive is an expression of an independent duty of care undertaken by the government to protect recruits from foreseeable harm. The Court finds that the directive is not a reflection of an independent duty of care, but only a command as to how government employees should properly carry out their assigned duties. Nearly every government employee is guided by officially-issued directives, and to construe each as an expression of an independent duty of care would be to expose the government to liability beyond the scope assumed in the Federal Tort Claims Act.

### b. Premises Liability

■ Plaintiff alleges that the government "failed to provide proper safeguards for activities involving the recruitment of women into the armed services and/or was otherwise negligent." *Complaint,* ¶ 4. In her brief in opposition to the motion, plaintiff argues that she was invited to the recruiting station for the purpose of recruiting her into the armed services, and as an invitee, she was entitled to that degree of care consistent with her status. While the complaint does not clearly plead a cause of action based on premises liability, the Court will construe plaintiff's claim as such for the purpose of argument.

Many courts have read *Sheridan* as permitting negligence claims against the government that could be seen as arising out of an assault or battery, but which in fact are based on an independent duty of the government. *See, e.g., Mulloy v. United States,* 884 F.Supp. 622, 631 (D.Mass.1995). For example, in *Doe v. United States,* 838 F.2d 220 (7th Cir.1988), the court permitted a claim against the government based on the sexual abuse of children in a government-operated day care facility. The court found that the government was liable for failure to fulfill its voluntarily undertaken duty to protect the children from such assaults, irrespective of whether the assailant was a government employee or a third party. *See also, Hallett v. United States Department of Navy,* 850 F.Supp. 874 (D.Nev.1994) (denying motion to dismiss negligence claim against government based on duty of U.S. to act reasonably as occupant or possessor of premises in hotel where alleged Tailhook assaults were to have occurred); *Bembenista v. United States,* 866 F.2d 493 (D.C.Cir.1989) (government not immune from claim based on duty to protect from foreseeable criminal acts of third persons). The Court will therefore consider whether New Jersey law permits plaintiffs to make out a negligence claim against the United States based on a duty of care which is independent of the employment relationship between Lupo and the government.

■ It is clear that New Jersey law recognizes a cause of action based on premises liability. The New Jersey Supreme Court has stated that "[t]he proprietor of a premises to which the public is invited for business purposes of the proprietor owes a duty of reasonable care to those who enter the premises upon that invitation to provide a reasonably safe place to do that which is within the scope of the invitation." *Butler v. Acme Markets, Inc.,* 89 N.J. 270, 445 A.2d 1141 (1982); *Keith v. Truck Stops Corp. of America,* 909 F.2d 743, 745 (3d Cir.1990). This duty includes the prevention of foreseeable criminal acts of third persons. *Butler,* 89 N.J. at 274, 445 A.2d 1141. In holding that the duty of reasonable care extends to protecting invitees from foreseeable criminal acts of others, the New Jersey Supreme Court relied upon the reasoning of the *Restatement (Second) of Torts,* which states

that a possessor of land is subject to liability "for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons ..." and by the failure to discover the likelihood that such acts will be done or to give a warning sufficient to enable an invitee to avoid the harm. *Restatement (Second) of Torts*, § 344 at 223–224 (1965). *See also Bencivenga v. J.J.A.M.M., Inc.*, 258 N.J.Super. 399, 609 A.2d 1299 (App.Div.), *cert. denied*, 130 N.J. 598, 617 A.2d 1220 (1992) (plaintiff brought claim against dance club for injury caused by unknown intentional tortfeasor).

The cases permitting a claim of premises liability against the United States present a different scenario than that now before the Court. For example, in *Hallett v. United States Department of Navy*, 850 F.Supp. 874 (D.Nev.1994), the premises upon which the assault occurred was not the place where the assailants worked. The hotel was a separate location over which the government arguably had control, and which was accessible to, and used by, people who were not there on government business. The assaults in *Hallett* were not within the scope of the assailants' employment. Indeed, neither the victims nor the assailants can be said to have been at the hotel in connection with or in furtherance of some government purpose.

To the contrary, the Court here is presented with a case where (1) the assailant was acting within the scope of his employment, (2) the assault occurred at the location where Officer Lupo performed his employment duties, however improperly, and (3) the plaintiff was at that premises in furtherance of the purpose for which the government maintained the facility. Any danger at the premises was caused by Lupo's behavior and therefore, any allegation of premises liability is actually a claim that the government failed to properly hire, train, or supervise him. While the Court recognizes that premises liability may, under certain circumstances, be the basis of a negligence claim against the United States, a theory of premises liability cannot be used as a subterfuge to mask a simple assault and battery claim based on inadequate hiring, training, or supervision of the offending employee.

Every day, across the country, thousands of federal employees interact with millions of citizens on government premises at post offices, administrative offices, courthouses, and other facilities. Tensions may rise during the course of these interactions, or government employees may fail to follow directives issued by their supervisors. Section 2680(h) was intended to bar claims arising from assaults by government employees. If the Court held that the government was subject to suit in such cases, it would overstep the bounds of the sovereign immunity waiver expressed by the government. Summary judgment will be granted to the defendant on this claim as well.

**D. Prematurity**

■■■ The Third Circuit has held that " 'where the facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course.' " *Miller v. Beneficial Mgt. Corp.*, 977 F.2d 834, 845 (3d Cir.1992), *quoting Costlow v. United States*, 552 F.2d 560, 564 (3d Cir.1977). Plaintiff submitted an affidavit pursuant to Fed.R.Civ.P. 56(f), in which her counsel states that no discovery has been completed in the case because the government filed its summary judgment motion immediately after the initial scheduling conference, and that discovery is needed to find out what the government knew, when they knew it, and what actions were taken, if any, to ensure that recruiting offices were safe. *Plaintiff's Brief in Opposition, Exhibit 4.* As the Court finds, however, that plaintiff is unable to state a cause of action against the United States arising out of the assault and battery by Officer Lupo, it is unnecessary to continue the summary judgment motion to complete discovery.

**IV. CONCLUSION**

The Court finds that the language of 28 U.S.C. § 2680(h), which excepts the government from liability when an injury "arises out of" an assault, precludes plaintiff from bringing suit against the government based on Officer Lupo's actions. Officer Lupo acted in the scope of his employment, and a

negligence claim against the government based on negligent supervision or on premises liability would inevitably be tied to Lupo's actions, and as such, would be barred by the assault and battery exception to the Federal Tort Claims Act. The Court lacks subject matter jurisdiction to hear the case. Defendant's motion for summary judgment therefore will be granted.